**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **SHAMRA HIBBERT,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | |
| **v.** | **Case No. 2:10-cv-833-PMW** |
| **CAROLYN W. COLVIN,[1]** **Acting Commissioner of Social Security,** | |
| **Defendant.** | **Magistrate Judge Paul M. Warner** |

Before the court is Shamra Hibbert's ("Plaintiff") appeal of the Commissioner's final decision denying Plaintiff's claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, *see* 42 U.S.C. §§ 401-434, and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, *see id.* §§ 1381-1383f.  After careful consideration of the written briefs and the complete record, the court has determined that oral argument is unnecessary in this case.

---

[1]  On February 14, 2013, Carolyn W. Colvin ("Commissioner") became the Acting Commissioner of Social Security.  Accordingly, she has been automatically substituted for Michael J. Astrue as the defendant in this action.  *See* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."); Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending.  The officer's successor is automatically substituted as a party.").

**BACKGROUND**

On December 31, 2008, Plaintiff applied for DIB and SSI, alleging disability beginning on March 31, 2007.[2]  Plaintiff's applications were denied initially and upon reconsideration.[3]  On July 25, 2009, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"),[4] and that hearing was held on December 1, 2009.[5]  On December 11, 2009, the ALJ issued a written decision denying Plaintiff's claims for DIB and SSI.[6]  On July 19, 2010, the Appeals Council denied Plaintiff's request for review,[7] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481.

On August 25, 2010, Plaintiff filed her complaint in this case, which was assigned to District Judge Clark Waddoups.[8]  Plaintiff filed an amended complaint on September 2, 2010.[9]

---

[2]  *See* docket no. 7, Administrative Record ("Tr. _____") 169-181.

[3]  *See* Tr. 87-88, 90-91.

[4]  *See* Tr. 119-120.

[5]  *See* Tr. 38-84.

[6]  *See* Tr. 13-37.

[7]  *See* Tr. 1-5.

[8]  *See* docket no. 3.

[9]  *See* docket no. 5.

The Commissioner filed her answer on October 29, 2010,[10] and the court received the Administrative Record the same day.[11]

On November 23, 2010, both parties consented to having a United States Magistrate Judge conduct all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[12]  Consequently, the case was reassigned to then Magistrate Judge David Nuffer pursuant to 28 U.S.C. § 636(c) and rule 73 of the Federal Rules of Civil Procedure.[13]

Plaintiff filed her opening brief on January 7, 2011.[14]  The Commissioner filed her answer brief on February 4, 2011.[15]  Plaintiff filed her reply brief on February 22, 2011.[16]

In March 2012, Judge Nuffer became a United States District Judge.  On March 26, 2012, the case was reassigned to Judge Nuffer, this time as a newly appointed district judge.[17]  On May

---

[10]  *See* docket no. 6.

[11]  *See* docket no. 7.

[12]  *See* docket no. 11.

[13]  *See id.*

[14]  *See* docket no. 13.

[15]  *See* docket no. 14.

[16]  *See* docket no. 15.

[17]  *See* docket no. 16.

22, 2012, Judge Nuffer referred this case to Magistrate Judge Evelyn J. Furse pursuant to 28

U.S.C. § 636(b)(1)(B).[18]

On June 18, 2012, the parties again consented to having a United States Magistrate Judge

conduct all proceedings in the case, including entry of final judgment, with appeal to the United

States Court of Appeals for the Tenth Circuit.[19]  Consequently, the case was reassigned to Judge

Furse pursuant to 28 U.S.C. § 636(c) and rule 73 of the Federal Rules of Civil Procedure.[20]  On

November 6, 2012, Judge Furse recused herself from presiding over this case, and it was

reassigned to Magistrate Judge Paul M. Warner.[21]

## STANDARD OF REVIEW

This court "review[s] the Commissioner's decision to determine whether the factual

findings are supported by substantial evidence in the record and whether the correct legal

standards were applied."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and

citation omitted).  The Commissioner's findings, "if supported by substantial evidence, shall be

conclusive."  42 U.S.C. § 405(g).  "Substantial evidence is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.  It requires more than a

scintilla, but less than a preponderance."  *Lax*, 489 F.3d at 1084 (quotations and citation

omitted).  "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor

---

[18]  *See* docket no. 17.

[19]  *See* docket no. 19.

[20]  *See id.*

[21]  *See* docket no. 20.

4

substitute [its] judgment for that of the [ALJ]."  *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th

Cir. 2006) (quotations and citation omitted).  "The failure to apply the correct legal standard or to

provide this court with a sufficient basis to determine that appropriate legal principles have been

followed [are] grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005)

(quotations and citation omitted).

A five-step evaluation process has been established for determining whether a claimant is

disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Williams v.*

*Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process).  If a

determination can be made at any one of the steps that a claimant is or is not disabled, the

subsequent steps need not be analyzed.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> Step one determines whether the claimant is presently
> engaged in substantial gainful activity.  If [the claimant] is,
> disability benefits are denied.  If [claimant] is not, the decision
> maker must proceed to step two: determining whether the claimant
> has a medically severe impairment or combination of
> impairments. . . . If the claimant is unable to show that his
> impairments would have more than a minimal effect on his ability
> to do basic work activities, he is not eligible for disability benefits.
> If, on the other hand, the claimant presents medical evidence and
> makes the *de minimis* showing of medical severity, the decision
> maker proceeds to step three.

*Williams*, 844 F.2d at 750-51 (quotations and citations omitted); *see* 20 C.F.R.

§§ 404.1520(a)(4)(i)-(ii), 416.920(a)(4)(i)-(ii).

"Step three determines whether the impairment is equivalent to one of a number of listed

impairments that . . . are so severe as to preclude substantial gainful activity . . . .  If the

impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to

benefits. If not, the evaluation proceeds to the fourth step . . . ." *Williams*, 844 F.2d at 751 (quotations and citations omitted); *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). At the fourth step, the claimant must show that the impairment prevents performance of his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). "If the claimant is able to perform his previous work, he is not disabled." *Williams*, 844 F.2d at 751. If, however, the claimant is not able to perform his previous work, he "has met his burden of proof, establishing a prima facie case of disability." *Id.*

At this point, "[t]he evaluation process . . . proceeds to the fifth and final step." *Id.* At this step, the burden of proof shifts to the Commissioner, and the decision maker must determine "whether the claimant has the residual functional capacity [("RFC")] . . . to perform other work in the national economy in view of his age, education, and work experience." *Id.*; *see* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If it is determined that the claimant "can make an adjustment to other work," 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), he is not disabled. If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), he is disabled and entitled to benefits.

## ANALYSIS

In support of her claim that the Commissioner's decision should be reversed, Plaintiff argues that the ALJ erred in evaluating: (1) the medical opinion evidence, (2) Plaintiff's credibility, and (3) Plaintiff's RFC. The court will address those arguments in turn.

6

## I.  Medical Opinion Evidence

Under the relevant regulations, an ALJ is required to consider certain factors when determining the weight to be assigned to a medical opinion.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).  An ALJ is not required to discuss every factor set forth in the relevant regulations. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (stating that when an ALJ does not discuss every factor, it "does not prevent this court from according his decision meaningful review").  As with other evidentiary matters, when an ALJ is considering medical opinion evidence, it is the ALJ's role to weigh and resolve evidentiary conflicts and inconsistencies.  *See, e.g.*, *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000); *Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988).

Plaintiff argues that the ALJ erred by failing to evaluate the medical opinion evidence properly.  Specifically, Plaintiff asserts that the ALJ erred by giving the greatest weight to the opinions of Ronald Houston, Ph.D. ("Dr. Houston"), a licensed psychologist who testified at the hearing.  Plaintiff further contends that Dr. Houston's testimony and opinions are not supported by the record.  Plaintiff also maintains that the ALJ should have given more weight to the opinions of Dr. Kenneth Wallis, M.D. ("Dr. Wallis").

### A.  Weight Assigned to Dr. Houston's Opinions

Plaintiff argues that the ALJ erred by giving the greatest weight to the opinions of Dr. Houston.  The court disagrees.  In reaching his determination about Dr. Houston's opinions, the ALJ relied upon proper factors.  The ALJ properly relied upon the fact that Dr. Houston's opinions were well supported by the record.  *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).

7

Before reaching that conclusion, the ALJ provided a specific discussion of Dr. Houston's opinions and the record evidence that supported them.[22] The ALJ also properly relied upon the fact that Dr. Houston was a board-certified psychologist. *See* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). Finally, the ALJ properly relied upon the fact that Dr. Houston had a specialized knowledge of the Commissioner's standards and rules. *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6).

## B. Record Support for Dr. Houston's Opinions

Plaintiff next argues that Dr. Houston's testimony and opinions are not supported by the record. Specifically, Plaintiff asserts that the ALJ erred by agreeing with Dr. Houston's (1) testimony that Plaintiff had received "no real treatment"[23] for her depression, (2) assessment of an evaluation completed by Dr. Robert Sawicki, Ph.D. ("Dr. Sawicki"), and (3) assessment of certain records from Wasatch Mental Health.

### 1. Dr. Houston's Testimony Concerning Plaintiff's Depression

Plaintiff's argues that the ALJ erred by relying on Dr. Houston's testimony that Plaintiff received "no real treatment"[24] for her depression other than using Prozac. Plaintiff points out that Plaintiff had received other treatment for her depression other than Prozac. Accordingly, Plaintiff argues that the ALJ erred by relying on that portion of Dr. Houston's testimony. In the

---

[22] *See* docket no. 30.

[23] Tr. 63.

[24] *Id*.

court's view, Plaintiff has interpreted Dr. Houston's testimony too narrowly.  While Dr. Houston did state that Plaintiff had received "no real treatment"[25] for her depression, the ALJ's decision demonstrates that he did not rely on a literal interpretation of that statement.  Instead, his decision shows that he relied on Dr. Houston's testimony that Plaintiff had not received any consistent treatment for her mental impairments.[26]  For these reasons, this argument fails.

### 2. Dr. Sawicki's Evaluation

Plaintiff next contends that the ALJ erred by relying on Dr. Houston's interpretation of an evaluation completed by Dr. Sawicki.  Specifically, Plaintiff contends that Dr. Houston incorrectly characterized Dr. Sawicki's evaluation as being primarily personality based.  In his testimony, Dr. Houston indicated that Dr. Sawicki's evaluation was "more personality based" and that the "primary emphasis" of Dr. Sawicki's evaluation "was the personality assessment."[27] The ALJ adopted Dr. Houston's interpretation in his opinion and concluded that Dr. Sawicki's findings were not well developed.  Plaintiff argues that the ALJ erred in that regard because Dr. Sawicki's evaluation demonstrates that he completed several tests that are not aimed at assessing personality.

This argument fails.  As noted by the Commissioner, while Dr. Sawicki did perform tests that were not personality assessments, the results of those tests were fairly normal.[28]  At the same

---

[25]  *Id*.

[26]  *See* Tr. 30, 72-73.

[27]  Tr. 64.

[28]  *See* Tr. 296.

time, Dr. Sawicki noted that "[o]f significant concern are findings of the personality assessment."[29]  Given the content of Dr. Sawicki's evaluation and the emphasis he assigned to the various test results, the court concludes that Dr. Houston's interpretation of the evaluation was reasonable.  As such, the ALJ did not err by relying upon Dr. Houston's interpretation.

Furthermore, even if Plaintiff had been able to persuade the court that Dr. Houston's interpretation of Dr. Sawicki's opinions is somehow inconsistent with the record, Plaintiff has failed to show how that would have affected the ALJ's decision.  In other words, even if Plaintiff's argument had been successful, she has not demonstrated harmful error.  *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *see also Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005) (recognizing applicability of harmless error analysis in Social Security context).

### 3.  Wasatch Mental Health Records

Plaintiff maintains that the ALJ erred by relying on Dr. Houston's interpretation of certain records from Wasatch Mental Health.  Specifically, Plaintiff argues that Dr. Houston should not have relied upon the profile contained in those records to support his statement that "[i]t's difficult to say"[30] whether Plaintiff's impairments met or equaled certain criteria for the listed impairment for depression.  Plaintiff contends that her argument is further supported by Dr.

---

[29]  *Id*.

[30]  Tr. 74.

Houston's testimony that the profile was a "poor evaluation"[31] and the ALJ's decision to afford the profile "very little weight."[32]  For these reasons, Plaintiff asserts that the ALJ erred by relying on Dr. Houston's interpretation of the profile.

This argument is without merit.  Plaintiff has correctly stated that Dr. Houston rated the profile as a "poor evaluation"[33] and that the ALJ gave the profile "very little weight."[34]  However, it appears from Dr. Houston's testimony that he based his opinion on the Minnesota Multiphasic Personality Inventory ("MMPI") score contained within the profile, not on the profile itself.  In his testimony, Dr. Houston indicated that the MMPI scores suggested malingering and an exaggeration of symptoms.[35]  Dr. Houston also testified that he viewed the evaluation as poor because it failed to address the significance of the MMPI score.[36]  The ALJ agreed with Dr. Houston's assessment of the profile in his decision and specifically stated that the MMPI score indicated an exaggeration of symptoms and possible malingering.[37]  For those reasons, the ALJ concluded that Plaintiff's impairments did not meet or equal certain criteria for the listed

---

[31]  Tr. 81.

[32]  Tr. 29.

[33]  Tr. 81.

[34]  Tr. 29.

[35]  *See* Tr. 74.

[36]  *See* Tr. 80.

[37]  *See* Tr. 30.

impairment for depression.[38]  The court is not persuaded that the ALJ committed any error by reaching that conclusion.

To the extent that Plaintiff attempts to reargue the weight of the evidence before the ALJ on this issue by claiming that the ALJ and Dr. Houston should have addressed or relied upon different evidence, that tactic is futile on appeal because it is not this court's role to reweigh the evidence.  *See Madrid*, 447 F.3d at 790.  Indeed, it is the ALJ's role to weigh and resolve evidentiary conflicts and inconsistencies.  *See, e.g.*, *Rutledge*, 230 F.3d at 1174; *Eggleston*, 851 F.2d at 1247.  From an evidentiary standpoint, the only issue relevant to the court is whether substantial evidence exists in the record to support the ALJ's conclusions.  *See Oldham*, 509 F.3d at 1257 (providing that the court reviewing the ALJ's decision reviews "only the sufficiency of the evidence, not its weight" (emphasis omitted)).

### C.  Weight Assigned to Dr. Wallis's Opinions

Plaintiff contends that the ALJ should have given more weight to the opinions of Dr. Wallis.  That argument fails.  Plaintiff has failed to persuade the court that the ALJ erred in the weight he assigned to the opinions of Dr. Wallis.  In discounting Dr. Wallis's opinions, the ALJ properly relied upon the fact that Dr. Wallis had never examined Plaintiff.  *See* 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1).  The ALJ also noted that Dr. Wallis had not reviewed the entire medical record, nor had he heard Plaintiff's testimony.  The court concludes that these were sufficient reasons for giving less weight to the opinions of Dr. Wallis.

---

[38] *See* Tr. 20-21, 30.

Again, to the extent that Plaintiff argues the weight of the evidence before the ALJ, the court will not entertain such arguments on appeal.  *See Oldham*, 509 F.3d at 1257; *Madrid*, 447 F.3d at 790; *Rutledge*, 230 F.3d at 1174; *Eggleston*, 851 F.2d at 1247.

## II. Credibility

Plaintiff argues that the ALJ erred in evaluating the credibility of Plaintiff's testimony.  In general, "[c]redibility determinations are peculiarly the province of the finder of fact, and [this court] will not upset such determinations when supported by substantial evidence."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotations and citation omitted).  Although credibility determinations "should be closely and affirmatively linked to substantial evidence," *id.* (quotations and citation omitted), they "do[] not require a formalistic factor-by-factor recitation of the evidence."  *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Social Security Ruling ("SSR") 96-7p clarifies the standards an ALJ must apply when evaluating the credibility of an individual's statements, including his or her allegations of pain. *See* SSR 96-7p.  In addition to the objective medical evidence, an ALJ should consider the following factors when assessing the credibility of an individual's statements:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat

> on his or her back, standing for 15 to 20 minutes every
> hour, or sleeping on a board); and
>
> 7.  Any other factors concerning the individual's functional
>     limitations and restrictions due to pain or other symptoms.

*Id.*; *see* 20 C.F.R. §§ 404.1529(c), 416.929(c); *see also Thompson v. Sullivan*, 987 F.2d 1482,

1489 (10th Cir. 1993).

In this case, the ALJ considered proper factors in reaching his determination that, overall,

Plaintiff's testimony about her disabling symptoms was not entirely credible.  First, the ALJ

properly relied on the following inconsistencies between Plaintiff's testimony and Plaintiff's

prior statements concerning her symptoms.  *See* SSR 96-7p (providing that an ALJ must consider

the consistency of a claimant's statements in determining credibility).  The ALJ noted that

Plaintiff testified that she quit her job at Wal-Mart because she was told that she would be fired

because of her excessive absences.[39]  Plaintiff testified that those absences were due to her

depression.[40]  However, in an evaluation completed prior to the hearing, Plaintiff reported that

she was unable to work because she was depressed *and* because she was caring for her sister's

---

[39]  *See* Tr. 26.

[40]  *See* Tr. 49-50.

14

son.[41]  The ALJ concluded that Plaintiff's omission of the latter fact from her hearing testimony

constituted an inconsistency and brought Plaintiff's credibility into question.[42]

The ALJ relied also on the fact that Plaintiff's testimony about the effectiveness of her

medications was inconsistent with other evidence in the record.  *See id.* (providing that a strong

indication of the credibility of a claimant's statements is their consistency with other information

in the case record).  Plaintiff testified that her depression-related medications were not always

effective.[43]  However, the portion of the ALJ's decision discussing Plaintiff's medical history

shows an inconsistent pattern of complaints about her depression-related symptoms,[44] which

belies Plaintiff's testimony that her medications were not effective in treating those symptoms.

The ALJ also noted that Plaintiff's mother had testified that Plaintiff was happy and less

depressed when she was on her medications.[45]

---

[41]  *See* Tr. 320.

[42]  The ALJ relies upon several other inconsistencies concerning Plaintiff's work at Taco
Bell and her attempt to obtain a commercial driver's license.  Plaintiff correctly argues that there
are not inconsistencies in the record with respect to those two issues.  However, the court
concludes that any error committed by the ALJ in that respect was harmless because he properly
relied on numerous other factors that support his credibility determination.  *See Shinseki*, 556
U.S. at 409 ("[T]he burden of showing that an error is harmful normally falls upon the party
attacking the agency's determination."); *see also Fischer-Ross*, 431 F.3d at 733-34 (10th Cir.
2005) (recognizing applicability of harmless error analysis in Social Security context).

[43]  *See* Tr. 52.

[44]  *See* Tr. 23-25.

[45]  *See* Tr. 26.

The ALJ relied further on the fact that Plaintiff did not initially allege that she had back pain that affected her ability to work, but later reported that she had back pain since the age of seventeen and stopped working in 2008 as a result of her back pain and other symptoms.[46]  *See id*.  The ALJ concluded that such an inconsistency further undermined Plaintiff's credibility.

Second, the ALJ properly relied upon the fact that Plaintiff's daily activities were inconsistent with Plaintiff's testimony about the degree of her limitations.  *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); SSR 96-7p.  The ALJ noted that, at the same time she was alleging disability, Plaintiff reported that she had been caring for her sister's son and stopped only because she was unable to pass a required background check.[47]

Third, the ALJ properly relied on his observations of Plaintiff at the administrative hearing.  *See* SSR 96-7p (providing that an ALJ may consider his or her own observations of a claimant at an administrative hearing in making the overall evaluation of the credibility of the claimant's statements).  Plaintiff testified that migraine headaches constituted one of her impairments and that she experienced one every day, including the day of the administrative hearing.[48]  The ALJ noted that, despite her complaints of a migraine headache, Plaintiff was able to attend and participate in the administrative hearing, which diminished the credibility of her complaints about her symptoms.[49]

---

[46]  *See* Tr. 201, 318.

[47]  *See* Tr. 320.

[48]  *See* Tr. 60-61.

[49]  *See* Tr. 26.

Finally, although not contained in the portion of the ALJ's decision concerning credibility, the ALJ did, as noted above, give great weight to the opinions of Dr. Houston. In his discussion of Dr. Houston's opinions, the ALJ specifically noted that Dr. Houston had opined that Plaintiff was possibly malingering and was exaggerating her symptoms.[50] It was proper for the ALJ to consider those opinions in making his overall evaluation of Plaintiff's credibility. *See id.* (providing that an ALJ should consider all of the medical evidence in making credibility evaluations, including medical opinion evidence).

The ALJ articulated sufficient reasoning and relied upon proper factors in determining that, overall, Plaintiff's testimony was not entirely credible. Furthermore, the court concludes that the ALJ's determination is "closely and affirmatively linked to substantial evidence." *Kepler*, 68 F.3d at 391 (quotations and citation omitted). Accordingly, the court concludes that the ALJ did not err in reaching his determination about Plaintiff's credibility.

### III. RFC

Plaintiff argues that the ALJ erred in his evaluation of Plaintiff's RFC. Specifically, Plaintiff asserts that the ALJ's RFC assessment is inconsistent with (A) the ALJ's step three determination and (B) the medical evidence. The court will address each argument in turn.

---

[50] *See* Tr. 30.

## A.  Step Three Determination

Plaintiff contends that the ALJ erred in his assessment of Plaintiff's RFC because that assessment is inconsistent with the ALJ's determination at step three of the sequential evaluation process.

In evaluating the severity of mental impairments at step two of the sequential evaluation process, the ALJ must rate a claimant's degree of functional limitation in four broad functional areas:  activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).  The ALJ rates a claimant's degree of limitation on a five point scale:  none, mild, moderate, marked, and extreme.  *See* 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).  An ALJ uses the same ratings in deciding at step three whether a claimant meets a listing contained in Appendix 1 of the relevant regulations (individually, a "listing" and collectively, the "listings").  *See* 20 C.F.R. § 404, Subpart P, Appendix 1, listing 12.00C.  This special technique is called the psychiatric review technique.  *See* SSR 96-8p; *see also* 20 C.F.R. §§ 404.1520a, 416.920a.  An ALJ's determination at step three does not constitute the assessment of a claimant's RFC.  *See* SSR 96-8p.  Instead, "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00" of Appendix 1 of the relevant regulations.  *Id*.

In this case, at step 3, the ALJ determined that Plaintiff had moderate difficulty in social functioning and moderate difficulty in her ability to maintain concentration, persistence, and

pace.[51]  In assessing Plaintiff's RFC, the ALJ determined that Plaintiff had "mild to moderate

limitations in dealing with stress in the workplace" and "mild limitations in concentrating, use of

judgment, following detailed instructions, performing duties within a schedule, sustaining routine

work without supervision, relating to others, interacting with the general public, [and] the ability

to get along with co-workers."[52]

Plaintiff maintains that those determinations are inconsistent and, therefore, that the ALJ

erred in assessing Plaintiff's RFC.  In other words, Plaintiff asserts that the ALJ's step three

determination must "reflect and agree"[53] with the ALJ's assessment of Plaintiff's RFC.  The

court is not persuaded by that argument.  As noted above, SSR 96-8p makes it clear that an

ALJ's determination at step three does not constitute the assessment of a claimant's RFC.

*See* SSR 96-8p.  Indeed, according to SSR 96-8, the assessment of a claimant's RFC is "a more

detailed assessment" than the determination made at step three.  *Id*.  Given that the analyses are

different, the court is not persuaded that an ALJ's step three determination must necessarily agree

in every respect with an ALJ's assessment of a claimant's RFC.  For this reason, the court

concludes that Plaintiff's argument on this point fails.

---

[51]  *See* Tr. 20.

[52]  Tr. 22.

[53]  Docket no. 13 at 19.

**B.  Medical Evidence**

Plaintiff asserts that the ALJ erred in his assessment of Plaintiff's RFC because it is inconsistent with the medical evidence.  Plaintiff contends that the ALJ's RFC assessment is not supported by substantial evidence because Dr. Houston did not provide any opinions or support for the limitations contained in the ALJ's RFC assessment.  Plaintiff also argues that the ALJ failed to include the limitations expressed by Dr. Wallis.  Those arguments are without merit.

"RFC assessments must be based on *all* of the relevant evidence in the case record."  SSR 96-8p.  In addition, it is the ALJ's responsibility to assess a claimant's RFC.  *See* 20 C.F.R. §§ 404.1546, 416.946; SSR 96-5.  As such, no doctor's opinion or testimony is conclusive on the issue of a claimant's RFC.  *See* SSR 96-5 (providing that some issues, such as an individual's RFC, "are not medical issues regarding the nature and severity of an individual's impairment(s) but are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability" and that "[t]he regulations provide that the final responsibility for deciding issues such as these is reserved to the Commissioner").  Accordingly, as noted by the Commissioner, it is not material that the ALJ's RFC assessment in this case is inconsistent with any one doctor's opinions.

## CONCLUSION AND ORDER

The court concludes that all of Plaintiff's arguments fail.  Accordingly, **IT IS HEREBY ORDERED** that the Commissioner's decision in this case is **AFFIRMED**.

**IT IS SO ORDERED**.

DATED this 14th day of March, 2013.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge